Good morning, Your Honors. Marion Yagman for the Plaintiffs. May it please the Court, what I would like to address here is the excessive force issue. And in Sanchez v. Gates, that's 287F3-8452, the Court said excessive force claims typically boil down to an evaluation of the various accounts of the same event. And here you have various accounts of the same event. You have the deputy saying one thing and several other witnesses, Barry LeCamp, Christopher LeCamp, and even Deputy Roth saying other things. And in particular I'm referring, of course, to the actual force that took place when the plaintiff had been taken to the ground. Is Ms. Bennis herself going to be capable of being a witness here? Is that testimony that we should consider in light of the fact that she thought that she testified that she wasn't sure she could recall all of the events of that day? Are you talking about Mary LeCamp or Bennis? No, Bennis. I don't believe that she is a witness because there are some things that she does remember. She's akin to the Santos case where the plaintiff was basically unable to recall very much of what happened to him. He was mentally unbalanced. She had been knocked to the ground. She had been actually rendered unconscious by the blow to her face. But the real problem is that she's alcohol impaired and so that she's not likely to recall the events leading up to the time that she gets knocked out. Is that the problem? Well, she does recall them, doesn't she? She recalls the fact that she didn't kick Deputy Willoughby and she didn't try to kick him and she didn't hit him. And that's corroborated by the two witnesses. And that's important because if she didn't kick him and she didn't hit him and didn't try to strike him or try to kick him, then there was no basis for taking her to the ground. There's no basis for arresting her at that point in time. Her behavior there was no different than the behavior of the two people upstairs. Why were the police there in the first place? I'm sorry? Why were the police there in the first place? You draw a picture of an innocent situation where everybody's going about their business and nobody's got any problems and then your client gets taken down. They were there in the first place because women were fighting. Isn't that why they were there? They got a call. Women are fighting. They were having a verbal altercation. There was a disturbance. I'm suggesting what the police were told. You know because you've got a client and you've discussed it, but the police were told, come, we need your help. Women are fighting or something to that effect. Isn't that what the records show? That's absolutely correct, Your Honor. And the police came and they saw somebody who was at least in an agitated condition. Absolutely correct, Your Honor. But that's not the reason why Deputy Willoughby decided to arrest the plaintiff. His reason for arresting her was that he alleged she had caused, she tried to kick him and she had kicked him. He mentions, after the fact, he mentions the PC-148, but the reason why he actually took her to the ground, which was an arrest, was for that reason. And those are disputed issues of fact. You have disputed issues of fact. When she's on the ground, he gets on top of her and she's, the other witnesses say that she's reaching up towards him. He says she's trying to bite him. You also have to look at the force, the force that was inflicted. And that was very severe force. In some circuits that would be considered to be deadly force because in some, not in this circuit, but force that causes serious bodily injury. If he really intended deadly force, he had the means and the wherewithal to bring that about. He, this record could suggest, and I think undisputably so, that he was avoiding using deadly force. I'm sorry? That he was avoiding using deadly force. What I'm saying is that he caused serious bodily injury to the plaintiff. He caused fractured nose, fractured maxillary sinus, fractured orbital wall, black eye, could have blinded her. You have both a very, very serious bodily injury. Diorly in a footnote states that that type of injury, serious bodily injury, is considered deadly force in some circuits. It's not in this one because of the, I think it's the Vera Cruz v. City of Escondido case. That's at 139 F. 3rd, 659-663. But Diorly specifically in its footnote states that we just have a very high standard. I don't want to tie up on this point because you've got others you want to make. Your first point is there's disputed fact as to what happened during the altercation. But you've got some other points you want to make. Yes, I do. And that is that you do have to look at the objective reasonableness because the force to be applied is balanced against the need for force. And here you have, you don't have a dangerous felon. You have an inebriated person who's very much akin to a mentally unbalanced person, not in the right mind. And that type of person, that type of force inflicted upon that type of person would violate her constitutional rights. And you have to balance the excessive force against the need for force. He could have given her a warning. He didn't. And that, I think, again, was required by Diorly and Santos. He could have, but didn't, have inflicted much less force. And he didn't. And so under the circumstances, I believe that what you have here is, first of all, disputed issues of fact and excessive force in light of the type of situation that was going on there and the conduct which had occurred. I would like to reserve some time, and I'm not sure quite how much time I've had. You have two minutes and 45 seconds. I'd like to reserve it. Thank you. Mr. Davenport? Mr. Davenport, at some point you're going to have to tell us why there is not at least a disputed fact as to what happened to the altercation. Absolutely, Your Honor. You can make your argument as you want. Absolutely, Your Honor. There are a lot of undisputed facts in this case. I understand that plaintiff has come in and disputed several elements. But let's look at what is not disputed. It's undisputed that the plaintiff that night was intoxicated. She was at the very least belligerent, and she was combative. I don't think I need to remind the court of the profanities that were being tossed back and forth between the two sets of feuding women. That's not grounds though for hitting somebody in the eye, is it? No, it's not, Your Honor. But what is is that the officer there, the independent eyewitnesses indicated that the officer talked to her. He argued with her for 10 to 15 minutes before any physical altercation took place. It's undisputed that he attempted to calm her down, and she concedes that she did not calm down when instructed to do so, and he was trying to eliminate this whole situation. If you want to go straight to Ms. Jagman's point, though, Ms. Jagman's point is the altercation, the takedown occurred because, on his allegation, she kicked him. Hers, I didn't. And the harm that resulted followed the altercation, not during the time they talked it over. That's where the harm. So we get to the pivotal moment, and we've got one side saying one side thing and another side saying the other, and the court has entered some re-judgment, and you need to tell us how that can happen. Well, at that point, there is not just probable cause to arrest her for the assault on the officer. There's also probable cause to arrest her for the 148. What the officer indicates at that particular moment, his objective belief, isn't relevant to whether or not there's probable cause for the arrest which takes place. It's undisputed when he tries to seize her, she struggles and fights back. All the witnesses say that before she is taken to the ground. So even if there is a dispute as to whether or not there was this kick or this punch or the swearing back and forth of the officer, if there's probable cause to arrest her for another ground, and the arrest is viable for the 148 grounds. Mr. Eggman might say certainly there's probable cause to arrest, but that doesn't justify the use of excessive force. And we allege that there was excessive force, and at this moment, there's been summary judgment, and we can't proceed. Well, I guess it depends on what use of force we're talking about. Well, there's no doubt that she was injured. You're not arguing that she wasn't, are you? No, I'm not arguing that at all. So her point is, the inference goes with her. She can't be injured to that extent unless excessive force was used. She would argue, I think. Well, let's break it down into two different parts. There's the initial takedown, and then there's the strike. If the initial takedown is justified because the arrest is valid under 148A, then that's a permissible use of force. But she doesn't get her foot get clocked in the eye when he takes her down. I think that's the real troubling part for everybody, Your Honor, and I acknowledge that. What we have, though, here is when the officer is engaged in a lawful arrest pursuant to 148, even if you discard the 243 battery on the police officer, we've got a 148. We've probably got half a dozen other charges, too. Once she's in the process of being arrested, there's a continual struggle. She continues to tussle with him. At one point, she turns around, and all the witnesses indicate she's saying, get off me and trying to push him off of her. And then the officer at that point believes that she is trying to bite him. Yes. Now, what is there with regard to that? The officer says, I thought she was, it appeared to me that she was trying to bite me, so I whopped her. Okay, that's what the officer says. Now, who supports, she says, I don't think I did that or I didn't do it. She says, I don't remember. Okay, all right. Then the witness that was on the second floor that looked at this, what does that witness say? Other witnesses said, I didn't see that. It never says it didn't happen. It says, I didn't see that. Well, okay. That could well mean she didn't try to bite him because the fellow was watching and saw the whole thing. Isn't that right? That's one inference. Well, would that create the travel issue of fact on the question of whether he hit her because she was trying to bite him or not? Well, I think whether or not she was trying to bite him or not, there's also the issue of qualified immunity that comes into play at this point. The problem we have, we're not going to try this case. We can't try it. You just tell us why the court was correct in granting summary judgment in spite of the things we're talking about, even your version of the facts. Well, I believe that the use of force was reasonable out of the facts, but even if the court was inclined to disagree, what we have here is the doctrine of force. The reason why we're inclined to disagree is, is there an arguable, could reasonable minds differ on whether that was excessive force? Isn't that how you get to summary judgment? I understand. So you look at the injury. You can't tell us she didn't have that injury. She did. That's correct. So she had the injury. She was taken down. She was hit for whatever reason, and she suffered an injury, and they think they need to go to trial on that fact. I don't think that we're done at that point because then we're getting into the whole issue of qualified immunity. How would that come into play here? Well, what qualified immunity is designed to do is it's to protect officers from civil liability in those cases where they make a reasonable mistake of fact. Yeah, like if he had put the handcuffs on her and they were too tight and he didn't know it and she didn't know it and she got there and then she says my circulation was cut off, the handcuffs were too tight, you might have a good argument that qualified immunity. You put them on, he didn't know, she didn't know. Do you understand? But when you've got the injuries we've got here, how do you get to qualified immunity? He's not qualified to pop in the eye, is he? Absolutely, Your Honor. He can do it? Yes. Yes, under these facts, when he believes that she's being assaulted, when she is assaulting him, if that's what he believes, then you're absolutely right. But how can we determine that fact on this record? Because, Your Honor, it's not about what, it's not about, technically it's not about what she says happened or what he said happened. It's what he believed was happening. Well, what if he unreasonably believes that she was going to bite him? What if we can establish by, from the position that she's on the ground and the position that the WCAF saw her in, that she could not possibly have had her mouth anywhere near his arm? Then if he subjectively thinks she's going to bite him, that's an unreasonable belief and he has no justification for hitting her in the face. You know, Your Honor, I think it's difficult to look at that in the context here, two and a half years later up in Pasadena when we're not there under the heat of battle. And there was, you know, make no mistake, there was a battle that was going on there by all accounts. The doctor in qualified immunity was... The odds were not in her favor. She was, she was certainly, let's not say she was under the influence of alcohol. Let's just say she was affected by the use of alcohol and she's female and he's a trained police officer. And there they are having a little altercation, which I think the record establishes that that happened. No question. He took her down and then he hit her. No question. But do you understand the... But there are some other problems here. There may be other areas that you want to argue in addition to that one. Yeah, and I do understand your concern. But just because there was a use of force, just because there was a use of force... This is my concern. We just have an obligation to decide these cases and we have to decide them on the record. And this record has a hole in it. Well, I believe that this is exactly the type of situation that qualified immunity was designed to immunize. I have seen cases where qualified immunity happens where there's a failed gunshot. The fact that there was a blow to the head doesn't mean that by definition qualified immunity is off the table. If, for example, she was, you know, she had pulled out a gun and he believed that she was going to pull the trigger... Take away from the gun, let's let it be Yvonne the Holyfield. Then he was drawing his fist back, the man hit him with his baton in the head. You might have a different set of facts. I don't think the officer is required to be a punching bag to allow himself to be struck and... That's right. You may prove it at trial. Counsel, in order to make your qualified immunity claim here, at this point, you're going to have to concede that he acted unconstitutionally. Under Saucier v. Katz, we have to reach the constitutional question first before we can get to that. So if you want us to decide the qualified immunity question, counsel, you're going to have to concede that he acted unconstitutionally. And then we're going to have to decide that the law was not so clearly established that he's responsible for knowing that. Isn't that your position? Let me back up. When I first stood up here, I said I believe the use of force was reasonable under the undisputed facts of this case. But even if the court concludes that it wasn't, he's still immunized under the doctrine of qualified immunity. But you are right, Your Honor, that we don't even get to the issue of qualified immunity if the court determines that the force was reasonable. Right. But if you want to persist in your argument about qualified immunity, you're going to have to concede the unconstitutionality of his actions. And if you're telling us that we might be able to find that and that we probably shouldn't, but that we might be able to find that, that sounds like conflict in the evidence and it probably ought to go back to a jury. It's assuming, arguendo, that the court has a different take on this than I do. I don't believe reasonable minds can differ. But you think there's only one set of facts and then we should just figure out what the law is? Yes, that's correct, Your Honor. Okay. All right. Thank you, counsel. Thank you. Thank you very much. Ms. Yagler, response? I really don't think I have anything more to argue, Your Honors. Thank you. Unless the Court has any questions. Thank you very much. Thank you. We thank both counsel for their argument.
judges: Thompson, Tashima, Bybee